WYC:DCW

**M-10-896**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

MARSHA EASTMAN and COLLIS NURSE,

        Defendants.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(21 U.S.C. § 963)

EASTERN DISTRICT OF NEW YORK, SS:

      JEFFREY C. PERRY, being duly sworn, deposes and states that he is a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

      Upon information and belief, in or about and between July 27, 2010 and August 3, 2010, within the Eastern District of New York and elsewhere, defendants MARSHA EASTMAN and COLLIS NURSE, together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved one kilogram or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a).

      (Title 21, United States Code, Section 963).

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. On July 27, 2010, Customs and Border Protection ("CBP") Officers conducted an examination of a freight package (the "package") that arrived at Miami International Airport aboard Amerijet flight # 820 from Georgetown, Guyana via Santo Domingo, Dominican Republic.

2. During this examination, CBP Officers discovered that a white powdery substance was concealed within the walls of the package. The white powder field-tested positive for the presence of cocaine. In all, the package contained over 1 kilogram (about 3 pounds) of suspected cocaine.

3. Notably, the package was addressed to the defendant, MARSHA EASTMAN, at a residence on Herzl Street in Brooklyn, New York. The shipping label also bore a purported contact telephone number for EASTMAN. In fact, the telephone number was for a cell phone belonging to the defendant COLLIS NURSE.

4. ICE Special Agents in Miami took custody of the package from CBP. Thereafter, the ICE Special Agents in Miami shipped the package to ICE Special Agents assigned to John F. Kennedy International Airport ("JFK") in Queens, New York.

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

5. After conducting further investigation, ICE Special Agents in New York were able to obtain a photograph of EASTMAN. Moreover, the Special Agents were also able to confirm through public utility records that a person with the last name EASTMAN lived at the same address on Herzl Street in Brooklyn that was listed on the shipping label of the package.

6. On August 3, 2010, ICE Special Agents posing as Amerijet employees called the defendant EASTMAN using the telephone number on the shipping label of the package. Initially, Special Agents left a voicemail in which they asked her to call Amerijet in order to pick up the package. A few hours later, a woman identifying herself as MARSHA EASTMAN returned the call to the ICE Special Agents. During the ensuing conversation between EASTMAN and an undercover ICE Special Agent, EASTMAN was instructed as to how she could pick up the package from an Amerijet warehouse in Queens, New York near JFK Airport.

7. Also on August 3, 2010, an ICE Special Agent conducted surveillance on EASTMAN's residence in Brooklyn. At about 3:20 p.m., the ICE Special Agent saw a person matching EASTMAN's photograph leave her residence and get into the passenger seat of a Ford Explorer driven by the defendant COLLIS NURSE. The Ford Explorer was registered to NURSE.

8. About 30 minutes later, Special Agents saw NURSE drop off the defendant EASTMAN near the Amerijet warehouse in

4

Queens, New York. Thereafter, EASTMAN entered the Amerijet warehouse and presented her driver's license to an ICE Special Agent acting in an undercover capacity. The driver's license bore EASTMAN's photograph and identified her as MARSHA EASTMAN. EASTMAN was then instructed by the undercover ICE Special Agent to complete certain paperwork and go to a CBP building at JFK to get the package cleared by CBP.

9. The defendant NURSE remained in his Ford Explorer at the Amerijet warehouse while EASTMAN asked another person, seemingly a stranger, to drive her to the CBP building at JFK Airport, which was a short distance away. Thereafter, EASTMAN went to the CBP building and had her package cleared before returning with the stranger to the Amerijet warehouse.

10. After arriving back at the Amerijet warehouse, EASTMAN retrieved the package and attempted to load it into the back of NURSE's Ford Explorer. At this point, both NURSE and EASTMAN were placed in custody. During a search of the defendant NURSE, ICE Special Agents found that he was carrying a cell phone. The telephone number for the cell phone he was carrying matched the telephone number that was on the shipping label of the package.

11. After receiving <u>Miranda</u> warnings, NURSE admitted that the cell phone that he was carrying belonged to him. He further stated that he had received the voicemail message to

EASTMAN from the undercover Special Agent posing as an Amerijet employee. NURSE acknowledged calling EASTMAN after he received the message.

WHEREFORE, your deponent respectfully requests that defendants MARSHA EASTMAN and COLLIS NURSE be dealt with according to law.

JEFFREY C. PERRY
Special Agent
Immigration and Customs Enforcement

Sworn to before me this
4th day of August, 2010

THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK